## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GREGORY LOVE,** | ) | |
| **AIS # 206953,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:20-00588-JB-N** |
| | ) | |
| **RAYNARD HALL,** *COI, and* | ) | |
| **ROBERT STEWART,** *COI,* | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATIONS

This civil action is before the undersigned on Defendants Raynard Hall and Robert Stewart's motion for summary judgment under Federal Rule of Civil Procedure 56. (*See* Doc. 16; Doc. 18).[1] Plaintiff Gregory Love, an Alabama prisoner proceeding pro se, timely filed a response (Doc. 20). Defendants declined to file a reply. Upon consideration, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED in part** and **DENIED in part**.

### I.   *Summary Judgment Legal Standards*

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if it might affect the outcome of the suit under governing law and it is 'genuine' if the evidence is such

---

[1] The District Judge assigned to this case referred this motion to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R) for appropriate resolution. (*See* 5/25/2021 electronic reference).

that a reasonable jury could return a verdict for the nonmoving party." *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) (quotations omitted). "Summary judgment is only appropriate if a case is 'so one-sided that one party must prevail as a matter of law.' " *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (citation omitted). However, a " 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) (per curiam). In other words, "there must be enough of a showing that the jury could reasonably find for that party . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quotations omitted).

Overall, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004). "[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration adopted) (quotations omitted)); *see also Allen*, 121 F.3d at 646 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (quotations

omitted)). "The Court 'must avoid weighing conflicting evidence or making credibility determinations.' " *Ave. CLO Fund*, 723 F.3d at 1294 (quoting *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000)). However, " 'an inference based on speculation and conjecture is not reasonable.' " *Id.* (quoting *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985)).

"Where . . . the non-moving party bears the burden of proof on an issue at trial, the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support its case, or present 'affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.' " *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (en banc)). "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). "For issues on which the non-moving party will bear the burden of proof at trial, the non-moving party must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.' " *Hammer*, 20 F.3d at 1141 (quoting *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993)).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment—only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of*

*Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Allen*, 121 F.3d at 646 (quotation omitted). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Id.* (quotation omitted). "Conclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015) (citing *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.")).

## II.    *Relevant Facts*

The undersigned looks to the following submissions to determine the relevant facts for purposes of summary judgment: (a) Love's complaint and attached affidavits (Doc. 1); and (b) Defendants' special report, affidavits, and other exhibits (Doc. 16); and (c) Love's response in opposition to summary judgment (Doc. 20).

### a.  Love's Complaint

Per the allegations in Love's complaint (Doc. 1),[2] which is affirmed under penalty of perjury and substantially constitutes an unsworn declaration under 28 U.S.C. § 1746, the events underlying this dispute occurred on October 4, 2020, at the Loxley Community Based Facility. Officer Hall discovered a cell phone in Love's bed and immediately reported the infraction to his supervisor. Hall then escorted Love to the shift office bathroom to be strip-searched and drug tested. Once these tasks were completed, the officers placed Love in the front lobby of the shift office. (Doc. 1, PageID.4).

After waiting in the front lobby for fifteen minutes, the corrections officers informed Love that he would be taken to a transitional housing unit. The officers

---

[2] Because Love is proceeding pro se, the undersigned must liberally construe his pleadings. *See Trawinski v. United Techs.,* 313 F.3d 1295, 1297 (11th Cir. 2002). The Court must also

> credit the "specific facts" pled in [Love's] sworn complaint when considering his opposition to summary judgment. *Perry v. Thompson,* 786 F.2d 1093, 1095 (11th Cir. 1986) ("Plaintiff alleged specific facts in his sworn complaint and they were required to be considered in their sworn form."); *Sammons v. Taylor,* 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[F]acts alleged in an inmate's sworn pleading are sufficient and ... a separate affidavit is not necessary.").

*Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).

began to inventory Love's items. Love informed one correction officer—Lt. Albritton—that he would not give his necklace to the officers. Lt. Albritton informed Love that he cannot take the necklace into the transitional housing unit, but that she could "put it up" for him. However, before Love could give her the necklace, Lt. Albritton returned to the shift office. Love then removed the necklace and put it in his waistband. The officers finished the inventory of his property and escorted Love to the shift office bathroom for another strip search. While walking to the bathroom, Love removed the necklace from his waistband and placed it in his right hand. (Doc. 1, PageID.5).

Officers Hall and Stewart observed Love remove the necklace from his waistband and ordered him give up the item. Love did not comply. Officers Hall and Stewart then pinned Love against a wall and grabbed his arms, placing them behind his back. Hall then began punching Love's left arm until "he heard something pop." After hearing the popping sound, Hall and Stewart called Lt. Albritton to report the apparent injury. Love then gave the necklace to Lt. Albritton and Hall released his arm. The officers returned Love to the front lobby of the shift office where Love waited for three-and-a-half hours while voicing complaints of an arm injury before eventually being taken to see the on-site nurse. The nurse did not observe any injury, but scheduled an X-ray to confirm. The X-ray revealed that Love broke his arm, and he was admitted to the hospital for surgery to repair the break. (Doc. 1, PageID.5).

**b. Defendants' Affidavits and Exhibits**

Defendants' version of events, as set out in affidavits from Hall and Stewart as well as exhibits to their special report, differs from Love's description of the incident. In Stewart's affidavit (Doc. 16-1), he states that he was directed to retrieve Love's property following the discovery of a phone in his cell. Stewart inventoried the property in the front lobby of the shift office. Next, Stewart's supervisor directed him to "perform a visual strip search of inmate Love's person." Stewart asserts that "[u]pon entering the restroom in the front lobby area, I observed inmate Love retrieve an unknown object from beneath [his] toboggan. I gave inmate Love multiple lawful direct orders to drop the object, inmate Love refused to comply." (Doc. 16-1, PageID.67). At this point, Stewart claims "that the minimum amount of force was used to regain control of inmate Love who was being resistant. I was concerned for my well-being and the well-being of my coworker because I had no knowledge of whether the object in inmate Love's hand a weapon was or not." (Doc. 16-1, PageID.68). Stewart also notes "that the amount of force used was within the scope of my training." (Doc. 16-1, PageID.68).

In Hall's affidavit (Doc. 16-2), he claims that he strip-searched Love before placing him in the transitional housing unit. (Doc. 16-2, PageID.69). During the search, Love failed to follow Hall's command to relinquish the object in his hand. Hall did not know what the object was, and feared for the safety of himself and his co-workers. Hall repeated the command several times to no avail, so "a use of force

was applied." Hall insists that he only used the "minimum amount of force" necessary to subdue Love, as determined by his training. (Doc. 16-2, PageID.70).

Defendants also submit documents related to the incident, including Love's health record confirming that he reported left arm pain after being punched by officers. (Doc. 16-5, PageID.160). A subsequent X-ray revealed that Love suffered a broken left arm (Doc. 16-5, PageID.161). Prison officials sent Love to USA Medical Center, where he underwent surgery to repair the fractures to his "left distal humeral shaft and lateral condyle." (Doc. 16-5, PageID.216).

Defendants also submitted an incident report,[3] which outlines the incident as follows:

> On Sunday October 4, 2020, at approximately 7:22 P.M., at Loxley Community Work Center, Correctional Officer Raynard Hall was conducting his institutional rounds when he observed Gregory Love D/206953 (B-17B) place one black Samsung cellular device SM-A015A, IMEl:35176611 underneath his assigned bed. Officer Hall confiscated the cellular device and escorted inmate Love to the front lobby where the incident was reported to Correctional Lieutenant Kayla Albritton. At approximately 8:10 P.M., Officer Hall collected a urine specimen from inmate Love, utilizing the proper chain and custody procedures. At approximately 7:40 P.M., Lt. Albritton reported the incident to Warden II Sharon Folks. Lt Albritton advised Warden Folks that this was inmate Love's 3rd disciplinary for possession of a phone. Warden Folks advised Lt. Albritton to have inmate Love placed inside the Transitional Housing Unit. Lt Albritton instructed Correctional Officers Robert Stewart and Officer Hall to strip search inmate Love and inventory his property before placing him into the Transitional Housing Unit.

---

[3] Defendants do not identify the author of the report or the foundation for the observations it chronicles. The incident report indicates that it was received by Correctional Lieutenant Kayla Albritton, and notes only that it was prepared by "charles.arthur" at 6:48 PM on October 8, 2020—four days after the events in dispute occurred. (Doc. 16-3, PageID.72–73).

Officer Stewart advised inmate Love that he was being placed inside the Transitional Housing Unit and that a strip search was needed. Inmate Love stated to Officers Stewart and Hall that he was not going inside the Transitional Housing Unit. Officer Stewart and Officer Hall instructed inmate Love to submit to a strip search. Inmate Love complied. During the search in the front lobby restroom, inmate Love removed an unknown item from beneath inmate Love's toboggan. Officers Hall and Stewart gave inmate Love a direct order to drop the item. Inmate Love took an aggressive stance and pulled the hand back. Officers Stewart and Hall immediately attempted to gain control of inmate Love, Officer Stewart had control of inmate Love's right arm and Officer Hall attempted to gain control of inmate Love's left arm. Both Officers Hall and Stewart ordered inmate Love to stop resisting and place both hands behind his back to be placed into hand restraints. Officers Stewart and Hall continued to give loud verbal commands for inmate Love to drop the item and to "Cuff Up". Inmate Love refused to comply with any lawful commands, and continued to aggressively resist. Officer Hall continued to attempt to gain control of inmate Loves left arm and place it behind inmate Loves [sic] back so that the hand restraints could be placed on inmate Love. While pulling inmate Loves arm to the rear Officer Hall heard a popping noise, at this time inmate Love quit resisting. Officers Hall and Stewart used no further force to place inmate Love into hand restraints.

Inmate Love requested Lt. Albritton to report to the restroom and retrieve the items inmate Love had been concealing in his right hand. Lt. Albritton reported to the restroom and retrieved the items from inmate Love (Samsung beats and necklace). Officers Stewart and Hall then placed hand restraints on inmate Love to the front and escorted inmate Love out of the restroom without further incident. (see attached pictures). During the search and investigation of the cellular device, it was discovered that inmate Love had an active Facebook and messenger accounts containing a search history including Correctional Officers' and their family members, names to include Correctional Officer Trainee Daniel Brown and Officer Hall's daughter Renee Hall. Inmate Love goes by the name "Gee Love" on Facebook. At approximately 11:00 P.M., Officer Stewart placed the discovered cellular device into a sealed evidence bag with the evidence sheet and incident report attached, before placing it into the locked phone box located in the front lobby closet. At approximately 11:10 P.M., Correctional Officers Fernando Macias and Carsen Stallworth departed LCBF with inmate Love, en-route to Fountain Correctional Facility, pending disciplinary action for possession of a phone/ accessory, participating in social network and failure to obey. No further action taken.

(Doc. 16-3, PageID.72–73) (paragraph breaks added). Pictures of unidentified individuals are included in Defendants' exhibits as well, but they are difficult to interpret given the poor scan quality. (*See* Doc. 16-3, PageID.110–16).

**c.  Love's Unsworn Declarations in Response**

After the Court directed Love to file any evidence in support of his opposition to summary judgment (*see* Doc. 20, PageID.180), he filed a response in opposition with additional unsworn declarations pursuant to 28 U.S.C. § 1746. Love concedes that he refused to follow orders from corrections officers, but he "avers that prior to the body search he was ordered by Hall and Stewart to remove the necklace and give it to them." (Doc. 20, PageID.263). Then, Love "refused to give the necklace to them and clasped it tightly in his hand." Love insists that "[b]oth Defendants knew that Love concealed the necklace in his hand" rather than a weapon or dangerous instrument. "Defendants were angry and frustrated," Love explains, "because he refused to turn over the necklace," so Hall punished Love by twisting his arm and "pounding" on it until it popped while Stewart twisted and restrained his other arm. (Doc. 20, PageID.263).

### III.   *Analysis*

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005). Here, Defendants do not dispute that they were acting under color of state law, leaving only the matter of whether Love's constitutional rights were violated to

be addressed. Love claims that Defendants violated his Fourth and Eighth Amendment rights to be free from excessive uses of force, while Defendants raise sovereign and qualified immunity defenses. The undersigned will address the issues as follows: (a) Defendants' sovereign immunity defense; (b) Love's Fourth Amendment claim; and (c) Love's Eighth Amendment claim.

## a. Sovereign Immunity

Defendants invoke sovereign immunity as a defense against Love's claims against them in their official capacities. The Eleventh Amendment specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," and applies "equally to suits against a state brought in federal court by citizens of that state." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998). "The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67, (1985)). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

While Love does not expressly name Defendants in their official capacities, he does list their positions as correctional officers in the caption of his complaint. (*See* Doc. 1, PageID.1). It is well settled in this circuit that suits seeking monetary relief against state correctional officers in their official capacities are generally barred by

the Eleventh Amendment. *See Taylor v. Adams*, 221 F.3d 1254, 1256 (11th Cir. 2000);

*Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997); *Dean v. Barber*, 951

F.2d 1210, 1215 n.5 (11th Cir.1992); *Free*, 887 F.2d at 1557.

> Official capacity lawsuits are "in all respects other than name, . . .
> treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159,
> 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). "A state official may not be
> sued in his official capacity unless the state has waived its Eleventh
> Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*,
> 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984), or Congress has
> abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S.
> 44, 59, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996). Alabama has not
> waived its Eleventh Amendment immunity, *see Carr v. City of Florence*,
> 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress
> has not abrogated Alabama's immunity. Therefore, Alabama state
> officials are immune from claims brought against them in their official
> capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir.
> 1997); *Powell v. Barrett*, 496 F.3d 1288, 1304, 1308 (11th Cir. 2007)
> (state defendants sued in their official capacity for monetary damages
> are immune from suit under the Eleventh Amendment).

*Johnson v. Keaton*, No. 2:05-CV-1238-WKW, 2008 WL 4493242, at *6 (M.D. Ala. Sept.

29, 2008)).

Neither party disputes that Defendants were state officials at the time the

action arose. Accordingly, to the extent Love seeks monetary damages from

Defendants in their official capacities, they are entitled to sovereign immunity.

Defendants should be awarded summary judgment in their favor on Love's claims for

monetary damages against them in their official capacities.

**b.  Love's Fourth Amendment Claim**

Love claims that Defendants violated his Fourth Amendment right to be free

from excessive force. (Doc. 1, PageID.7). However, even accepting Love's version of

the facts as true, his Fourth Amendment claim fails as a matter of law. "After

conviction, the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.' " *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Whitley v. Albers,* 475 U.S. 312, 327 (1986)); *accord Ruble v. King*, 911 F. Supp. 1544, 1553 n.9 (N.D. Ga. 1995). Because Love is an inmate held pursuant to a criminal conviction, his excessive force claim is rooted in the Eighth Amendment, not the Fourth Amendment. Accordingly, Defendants should be awarded summary judgment on Love's Fourth Amendment claims.[4]

**c. Love's Eighth Amendment Claim**

Love claims that Defendants violated his Eight Amendment right to be free from cruel and unusual punishment. Specifically, Love alleges that Defendants used excessive force in attempting to retrieve the necklace in his hand. To the extent Love brings this claim against them in their individual capacities, Defendants invoke the defense of qualified immunity.[5]

*1. Qualified Immunity*

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate

---

[4] Because Love's Fourth Amendment claims fail as a matter of law, the undersigned need not address Defendants' qualified immunity defense on this ground.

[5] Defendants make no argument that the use of force applied by Hall and Stewart individually in their altercation with Love is legally distinguishable. Further, the Eleventh Circuit has rejected the argument that a court must analyze corrections officers' actions separately when the officers act in concert to administer force. *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002). Accordingly, the undersigned treats Defendants' use of force collectively.

clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert International v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). The burden then shifts to the plaintiff to show that the defendant's conduct "violated a clearly established statutory or constitutional right." *Grayden v. Rhodes*, 345 F.3d 1225, 1231 (11th Cir. 2003).

It is clear in the Eleventh Circuit, however, that the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted). "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Id*. (citations omitted). As explained by the Eleventh Circuit, "[t]here is simply no room for a qualified immunity defense when the plaintiff alleges such a violation." *Id*. "The only question, then, is whether the [Love] has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment." *See id*. Accordingly, the undersigned will determine whether Love has alleged sufficient facts to survive Defendants' pending motion for summary judgment.

### 2.  Allegations of Excessive Force in Violation of the Eighth Amendment

"The Eighth Amendment, applicable to the states through the Fourteenth Amendment, governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison." *Id.* (citing *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003); *Bass v. Perrin*, 170 F.3d 1312, 1316 (11th Cir. 1999)). The Amendment prohibits the infliction of "cruel and unusual punishments . . . ." U.S. Const. amend. VIII. "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). Therefore, the "Eighth Amendment prohibits prison officers from using excessive force against prisoners." *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Thomas v. Bryant*, 614 F.3d at 1303–04).

Thus, "[t]he 'core judicial inquiry' for an excessive-force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). "This standard requires a prisoner to establish two elements—one subjective and one objective: the official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.' " *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

For the subjective element, the Eleventh Circuit identified five factors set out by the Supreme Court in *Whitley* to evaluate whether force was applied maliciously

or sadistically: (1) "the extent of injury"; (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting *Whitley,* 475 U.S. at 321).

For the objective element, courts focus on "whether the official's actions were harmful enough or sufficiently serious to violate the Constitution." *Sconiers*, 946 F.3d at 1265. The Eleventh Circuit explained that

> "[n]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37, 130 S.Ct. 1175. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 37–38, 130 S.Ct. 1175. Instead, the Eighth Amendment prohibits force that offends "contemporary standards of decency," regardless of whether "significant injury is evident," though the extent of injury may shed light on the amount of force applied or "whether the use of force could plausibly have been thought necessary." *Wilkins*, 559 U.S. at 37, 130 S.Ct. 1175 (citation and internal quotation marks omitted).

*Sconiers*, 946 F.3d at 1265–66.

If Love's allegations can defeat Defendants' motion for summary judgment, then Defendants are not entitled to qualified immunity from the Eighth Amendment excessive force claims. *See Skrtich*, 280 F.3d at 1301. "Summary judgment is not a time for fact-finding; that task is reserved for trial." *Sconiers*, 946 F.3d at 1263. "So when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. Indeed, if 'the only issue is one of credibility,'

the issue is factual, and a court cannot grant summary judgment." *Id.* (quoting *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742–43 (11th Cir. 1996)). When viewing all facts in the light most favorable to the non-movant, "if a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment. Rather, the court must hold a trial to get to the bottom of the matter." *Id.* (internal citation omitted).

Here, Love raises a genuine dispute of material fact sufficient to defeat Defendants' motion for summary judgment: namely, whether Defendants knew Love held a harmless[6] object in his hand prior to twisting and physically striking his arm.[7] In his unsworn declarations submitted in response to Defendants' motion for summary judgment, Love avers that prior to being strip searched, Love and Stewart ordered him to remove the necklace and give it to them. (Doc. 20, PageID.263). Love claims that he refused their order and placed the necklace in his hand. (Doc. 20, PageID.263). Defendants, however, assert that they did not know what Love held in his hand, prompting them to grab him and apply a "use of force" to ensure their safety. (Doc. 16-1, Doc. 16-2). If reasonable jury believes Love's testimony, they would

---

[6] Defendants may be able to prove at trial that Love's necklace could reasonably be construed as a dangerous item meriting a forceful response. However, the undersigned must view the evidence in the light most favorable to Love at this stage of the proceedings, and the only evidence regarding the threat posed by the necklace come from each side's competing affidavits.

[7] Because Love raises a genuine dispute of material fact in his response the Defendant's motion for summary judgment, the undersigned need not address whether Defendants met their burden to establish that Love has no evidence to support his case or present affirmative evidence demonstrating he would be unable to prove his case at trial.

have to conclude that Defendants twisted Love's arms behind his back—with Hall striking his upper left arm until it made an audible popping sound—in order to retrieve an object held in his right hand that Defendants knew to be harmless.

The dispute of fact regarding Defendants' knowledge of Love's necklace is genuine. A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Each side submitted only competing affidavits and declarations that address what Defendants knew prior to applying physical force to Love.[8] *Compare* (Doc. 20, PageID.262–63) *with* (Doc. 16-1, Doc. 16-2). Which version of events a jury ultimately believes comes down to the credibility of the eventual witnesses, and "if 'the only issue is one of credibility,' the issue is factual, and a court cannot grant summary judgment." *See Sconiers*, 946 F.3d at 1263 (quoting *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742–43 (11th Cir. 1996)).

This dispute is also material. Under the subjective element of an Eighth Amendment excessive force inquiry, Defendants' potential knowledge that Love possessed only a harmless necklace could lead a jury to find that they acted "maliciously and sadistically" by twisting his arms behind his back—with Hall

---

[8] Defendants include several reports made near the time of the incident (*see* Doc. 16-3), but the only evidence of what they observed prior to their altercation with Love is their affidavits (Doc. 16-1, Doc. 16-2) and an unsigned incident report with unclear authorship (Doc. 16-3, PageID.72–73). The former will have to be introduced at trial through Defendants' testimony in competition with Love's version of events. The latter, in its current form, does not bear sufficient reliability to be readily reduced to admissible evidence. *See* Fed. R. Evid. 803(5)–(6). Notably, these reports indicate that audio and/or video recordings of the incident exist (Doc. 16-3, PageID.74), yet none were submitted for the undersigned to review.

striking Love's extended arm until it audibly breaks. Specifically, Defendants' alleged understanding goes to three of the *Whitley* factors: (2) the need for force; (3) the relationship between that need and the amount of force used; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to that official. Under Love's version of events, Defendants' knowledge that he only withheld an "innocuous" necklace in his hand reduces the amount of force necessary for Defendants to force his compliance given the minimal threat.

The severity of Love's injury also cuts in his favor under the first *Whitley* factor. Love claims that Defendants twisted his arms into an unnatural position, and Hall began to "pound" his left arm—even though the necklace was in his right hand—until he suffered a fractured "left distal humeral shaft and lateral condyle" (Doc. 16-5, PageID.216). The fractures necessitated a hospital stay and surgery. Severe injuries like this may be indicative of excessive force. *Cf. Skrtich*, 280 F.3d at 1302 (holding that an inmate's hospitalization after corrections officers' use of force, among other factors, presented a viable excessive force claim).

Defendants' response after the altercation also favors Love. Under the fourth *Whitley* factor, courts are directed to consider any efforts made to temper the severity of the use of force. While the parties agree that Defendants immediately ceased to apply force to Love once his arm "popped," Love claims that he waited for over three hours before receiving medical care. Extended waits for medical attention following a use of force incident bolster an inmate's claim of excessive force. *Cf. Cockrell v.*

*Sparks*, 510 F.3d 1307, 1312 (11th Cir. 2007) (holding that prison officials' immediate summoning of medical assistance made it "less likely that either of them was acting sadistically instead of in good faith").

"Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). However, prison officials cannot act "maliciously and sadistically to cause harm" to inmates. *Hudson*, 503 U.S. at 7. Viewing this evidence in the light most favorable to Love, the undersigned finds that a reasonable jury could find in his favor under the *Whitley* factors.

Love also raises a material dispute regarding whether Defendants' use of force was objectively harmful enough to violate the Eighth Amendment. Courts look to " 'contemporary standards of decency,' regardless of whether 'significant injury is evident,' though the extent of injury may shed light on the amount of force applied or 'whether the use of force could plausibly have been thought necessary.' " *Sconiers*, 946 F.3d at 1266 (citing *Wilkins*, 559 U.S. at 37). Here, Defendants' use of force fractured two bones in Love's upper left arm, requiring a trip to the hospital and surgery. (Doc. 1, PageID.5; Doc. 16-5, PageID.216). Other courts have found that similarly serious injuries could violate the Eighth Amendment. *E.g., Hudson*, 503 U.S. at 10 (holding that blows that "caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes" and provide "no basis for dismissal of [a] § 1983 claim"); *Furman v. Warden*, 827 F. App'x

927, 933 (11th Cir. 2020) (unpublished) (collecting cases finding that injuries requiring hospitalization or leading to permanent disability are objectively harmful enough to violate Eighth Amendment). Accordingly, Love's allegations of the arm fractures he suffered could lead a reasonable jury to find that Defendants' use of force was objectively harmful.

The Eleventh Circuit emphasized that, in Eighth Amendment excessive force cases, "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support *a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury.*" *Campbell*, 169 F.3d 1353, 1374–75 (11th Cir. 1999) (quoting *Whitley,* 475 U.S. at 322). Here, Love's declarations portray Hall and Stewart breaking his arm with a combination of twisting and repeated physical strikes in an effort to acquire an innocuous necklace. While a jury may ultimately disbelieve Love's testimony in favor of Defendants' version of events, the undersigned cannot weigh the evidence and assess credibility at this stage of the proceedings. Viewing the evidence and drawing all reasonable inferences in Love's favor, a reasonable jury could reliably infer that Hall and Stewart acted wantonly to inflict pain upon Love, leading to an objectively harmful injury. Accordingly, Love's Eighth Amendment claims survive the scrutiny of summary judgment and Defendants are not entitled to qualified immunity. Defendants' motion for summary judgment on Love's Eighth Amendment claims should be denied.

## IV.  *Conclusion*

As set out above, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment (Doc. 16, 18) be **GRANTED in part** and **DENIED in part**. More specifically, Defendants' motion for summary judgment should be:

- **GRANTED** as to Love's claims against them in their official capacities on sovereign immunity grounds;

- **GRANTED** as to Love's Fourth Amendment claims because they fail as a matter of law; and

- **DENIED** as to Love's Eighth Amendment claims as Love raises a genuine dispute of material fact and Defendants are not entitled to qualified immunity.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error

if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 2nd day of March 2022.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**